UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PASI OF LA, INC.                                                              CIVIL ACTION

VERSUS                                                                          15-655-SDD-EWD

HARRY PEPPER & ASSOCIATES, INC.,
ET AL.

**RULING**

The Defendant, Harry Pepper and Associates ("HPA"), moves the Court to dismiss the claims asserted against it by PASI of LA, Inc. ("PASI") for lack of personal jurisdiction and improper venue, or alternatively a stay pending arbitration.[1] PASI opposes the Motion[2] and urges transfer of the case to the District Court for the Southern District of Mississippi as an alternative to dismissal.[3] For the following reasons, this Court will grant the *Motion to Dismiss* for lack of personal jurisdiction over the Defendant, HPA. All remaining Motions shall be dismissed as moot.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

This matter presents a contract dispute between PASI and Defendant, HPA. PASI filed an *Original Complaint and Request for Declaratory Judgment and Request for Injunction*[4] ("*Complaint*") in this Court on October 1, 2015 seeking a declaration that the contract dispute is not arbitrable and praying that the pending arbitration proceeding

---

[1] Rec. Doc. 33-1.
[2] Rec. Doc. 39.
[3] Rec. Doc. 60. According to PASI, "there is a companion suit with the same underlying facts pending in federal court in Mississippi . . . 1:15-CV-00369-HSO-JCG". Rec. Doc. 60-1, p. 3.
[4] Rec. Doc. 1.

33794

initiated by Defendant, HPA, be enjoined. The *Complaint* names as Defendants: HPA, Jacobs Technology, Inc. ("Jacobs"), and the United States National Aeronautics and Space Administration ("NASA").[5] It is undisputed that HPA is a foreign corporation incorporated in the State of Florida with its principal place of business in Jacksonville, Florida, and PASI is a Louisiana corporation.[6]

As part of a restoration project for the rocket launch site at the Stennis Space Center ("Stennis") in Hancock County, Mississippi, HPA was awarded a construction contract from NASA.[7] HPA in turn subcontracted with PASI to perform abrasive blasting and painting work on the Stennis project.[8] For reasons which are disputed, HPA, at the behest of the NASA, terminated PASI's work on the project.[9] PASI alleges that the termination of its contract was unlawful and unjustified. PASI filed the instant suit seeking a declaration that an arbitration clause in its subcontract with HPA is unenforceable and seeking that HPA be enjoined from proceeding with an arbitration bearing the caption "*Harry Pepper and Associates, Inc. vs. PASI of LA, Inc.* Case 01-15-0004-7930".[10]

Before PASI filed the instant action, HPA made a demand for arbitration with the American Arbitration Association ("AAA") in Hancock County, Mississippi, where the

---

[5] Rec. Doc. 1. NASA and Jacobs were voluntarily dismissed. Rec. Docs. 55 and 56.
[6] *Id.*
[7] Rec. Doc. 39, 9. 2.
[8] Rec. Doc. 1, ¶ 5 alleges that "On or about June 24, 2014, PASI entered into a subcontract agreement with HPA (HPA778-SII/10139) to abrasively blast and paint components of the B2 Test Stand including structural steel, the MPTA, lead-based paint coated steel plates, HPIW piping, deteriorated platforms, stairs, and handrails, the flame deflector, new structural components, and the Soft Core (all collectively hereinafter referred to as the "SUBCONTRACT")." The Subcontract at issue is made a part of the record at Rec. Doc. 1-2
[9] Rec. Doc. 1, ¶ 15.
[10] *Id.* at ¶ 45.

Stennis project is located, claiming that PASI caused the site to be contaminated with lead and caused work delays for the project.[11] PASI objected to the arbitration which is ongoing.[12] After filing its *Complaint* in this Court, PASI filed a suit against HPA and its surety, Travelers Insurance Company, in the United States District for the Southern District of Mississippi under the Miller Act, seeking recovery under HPA's payment bond. HPA asserted counterclaims against PASI for breach of the Subcontract in the Mississippi case and moved to stay that case pending arbitration.[13] The Mississippi District Court did not reach the issue of arbitrability, but stayed the action in the interest of judicial economy.[14]

## II.   LAW AND ANALYSIS OF PERSONAL JURISDICTION

"Where a Defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists."[15]  PASI bears the burden of making a *prima facie* showing that the Court has jurisdiction over HPA.[16] "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists."[17] However, in assessing whether the Plaintiff has presented a *prima*

---

[11] Rec. Doc. 1-3; On August 27, 2015, HPA filed a Demand for Arbitration against PASI, alleging breach of the Subcontract. This arbitration remains pending and is being administered by the American Arbitration Association ("AAA"), Case Number 01-15-0004-7930 (the "Arbitration").
[12] Rec. Doc. 1.
[13] *PASI of LA, Inc. v. Harry Pepper & Associates, Inc. et al,* 15CV369, S.D. Ms.
[14] *Id.* 15-CV-00369 (S.D. Ms.) Rec. Doc. 26.
[15] *Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)(citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).
[16] *Doddy* v. *Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996); *Percle* v. *SFGL Foods, Inc.*, 356 F. Supp. 2d 629, 633 (M.D. La. 2004).
[17] *Id.* (quoting *Bullion v. Gillepsie*, 895 F.2d 213, 217 (5th Cir. 1990)).

33794

*facie* case of personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.'"[18] The Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[19]

"A federal court . . . may exercise personal jurisdiction over a nonresident Defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment."[20]  It is well-established that Louisiana's long arm statute is coextensive with the limits of constitutional due process.[21]  Thus, the inquiry is whether the exercise of personal jurisdiction comports with federal constitutional guarantees.[22]

"[T]he Fourteenth Amendment Due Process clause requires satisfaction of a two prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.'"[23]  Sufficient minimum contacts will give rise to either general, "all-purpose" jurisdiction or specific, "case-linked" jurisdiction.[24]

**A. General Jurisdiction**

When a nonresident Defendant's contacts with the forum state, although not related to the plaintiff's cause of action, "are so 'continuous and systematic' as to render

---

[18] *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed.Appx. 628, 631 (5th Cir. 2015).
[19] *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)(quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).
[20] *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).
[21] *Jackson v. Tanfoglio Giuseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010)(citing *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)).
[22] *Id.* at 243.
[23] *Freudensprung v. Offshore Tech. Serv., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)(citing *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).
[24] *Goodyear Dunlop Tires Operations, S.A. v Brown*, 131 S.Ct. 2846, 2851 (2011).

[it] essentially at home in the forum State"[25] the Court may exercise general personal jurisdiction over the Defendant.[26] The Supreme Court instructs that the proper consideration when determining general jurisdiction is "'whether [a] corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'"[27]  The Fifth Circuit has observed that "[i]t is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."[28]

Although Plaintiff cites hornbook law pertaining to the analysis required to support the exercise of general jurisdiction over a non-resident Defendant, Plaintiff offers no facts and makes no argument that HPA has systematic and continuous contact with the forum State to support a finding of general jurisdiction. Plaintiff concedes that "[w]here, as in the instant case, Defendant's contacts are less pervasive, the court still may exercise specific jurisdiction in a suit arising out of or related to the Defendant's contacts with the forum."[29] There is no record evidence of systematic and continuous contact by HPA in Louisiana. There is no evidence that HPA has a physical presence in Louisiana, conducts business on a regular basis in Louisiana, that the subcontract was signed in Louisiana, or that the contract called for performance in Louisiana. The Court finds that PASI has failed to make a *prima facie* showing of substantial, continuous, and systematic contacts with Louisiana sufficient to support an exercise of general jurisdiction in this case.[30]

---

[25] *Id.* See International Shoe, 326 U.S. 310 (1945).
[26] *Daimler AG v. Bauman,* 134 S.Ct. 746, 761 (2014); *Jackson* v. *Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 84 (5th Cir. 2010).
[27] *Daimler AG v. Bauman,* 134 S.Ct. 746, 761 (2014)(quoting *Goodyear*, 131 S.Ct. 2846, 2851 (2011)).
[28] *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).
[29] Rec. Doc. 39, p. 6.
[30] *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003).

33794

## B. Specific Jurisdiction

Even when the defendant lacks "continuous and systematic contacts" to support general jurisdiction, the court may still exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."[31] Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."[32] "For a [court] to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state."[33] Within the Fifth Circuit, a three-step analysis is applied for the specific jurisdiction inquiry: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[34] If the plaintiff can establish the first two prongs, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable.[35]

PASI cites *Central Freight Lines Inc. v. APA Transport Corp.*[36] in support of its contention that HPA's contacts in Louisiana are sufficient to satisfy the first prong of specific jurisdiction analysis. In the *Central Freight Lines* case, the Court found that "during the course of negotiations, [the Defendant] specifically and deliberately 'reached out' to a Texas corporation by telephone and mail with the deliberate aim of entering into

---

[31] *Luvn' care*, 438 F.3d at 469 (quoting *Helicopteros Nacionales*, 466 U.S. at 414 (1984)).
[32] *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014).
[33] *Id.*
[34] *Monkton*, 768 F.3d at 433, (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).
[35] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 276 (5th Cir. 2006)(citation omitted).
[36] Note 28, *supra.*

a long-standing contractual relationship with a Texas corporation."[37] PASI argues that to "help seal the deal", and because HPA had "minority participation goals", HPA had to "subcontract 37% of the work to Small Disadvantaged Business" that "HPA knowingly availed itself of the availability of Louisiana's qualified and small disadvantaged business enterprise workforce."[38]  However, HPA offers uncontroverted evidence that "HPA received and evaluated proposals for the work ultimately performed by PASI from across the Southeast, including Mississippi and Florida, from subcontractors seeking to be awarded work on the Stennis Project."[39]  A desire to satisfy minority participation goals is not probative of activity purposely directed toward the forum state. While it may be that HPA sought minority participation, Louisiana contractors do not garner the market of same. In other words, there is no evidence that HPA strategically sought out Louisiana businesses for that purpose. There is no factual evidence or support for PASI's argument that "there were no such resources available in Mississippi."[40] This case is wholly distinguishable from the *Central Freight Lines* case where the evidence demonstrated that the Defendant "took 'purposeful and affirmative action' . . . that had the clearly 'foreseeable' effect of 'causing business activity in the forum state'."[41] There has been no such showing here.

PASI further argues that HPA's website and the website of its parent corporation EMCOR Group, Inc. ("EMCOR") are evidence of HPA's purposeful availment with the forum sufficient to establish specific jurisdiction. HPA objects to the admissibility of copies

---

[37] 322 F.3d 376, at 382 (5th Cir. 2003).
[38] Rec. Doc. 39, p. 8; Rec. Doc. 39-2.
[39] Rec. Doc. 46-1.
[40] Rec. Doc. 39, p. 9.
[41] 322 F.3d 376, 382 (5th Cir. 2003).

33794

of the HPA and its parent, EMCOR's, websites.[42] Assuming, without deciding, that the copies of the website pages offered by PASI are admissible, they nonetheless are insufficient to establish specific jurisdiction. The Fifth Circuit draws "upon the approach of *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*"[43] in determining whether the operation of an internet site can support the minimum contacts necessary for the exercise of personal jurisdiction.[44] "For specific jurisdiction we look only to the contact out of which the cause of action arises."[45] There is no argument and the record is devoid of evidence that HPA used its website to solicit bids from or contact PASI regarding the Stennis project.[46] To the contrary, PASI's Vice President attested that "HPA and Sauer, who was the contractor for [the Stennis Project], contacted me and asked whether [PASI] was interested in furnishing a painting quote to HPA for the Stennis Project. In response to that request, [PASI] submitted a quote to HPA on or about December 3, 2013."[47]

PASI further argues that HPA's website "solicits bids for contract work through an e-portal, which includes the option for selecting Louisiana as a region of interest."[48] According to HPA, it's "website does not contain an 'e-portal' by which HPA solicits bids" and "HPA's website is passive on HPA's part, and merely contains a one-way mechanism for companies to register for purposes of expressing interest in potential future work."[49]

---

[42] Rec. Doc. 46, note 11.
[43] 952 F.Supp. 1119 (W.D.Pa.1997).
[44] *Revell,* 317 F.3d 467, 470 (5th Cir. 2002).
[45] *Id.* at 472 (citing *Lewis v. Fresne,* 252 F.3d 352, 358 (5th Cir.2001)).
[46] In other words, "*Zippo*-active" internet activity wherein the website owner "engage[s] in repeated online contacts with forum residents over the internet". *Id.* at 472. PASI's Vice President attested that "[d]uring October, November or December 2013, HPA and Sauer, who was the contractor for work Package 2, contacted me and asked whether Professional was interested in furnishing a painting quote to HPA for the Stennis Project. In response to that request, Professional submitted a quote to HPA on or about December 3, 2013." Rec Doc. 39-2.
[47] Rec. Doc. 39-2.
[48] Rec. Doc. 39.
[49] Rec. Doc. 46-1.

33794

Even viewing these conflicting facts in favor of the Plaintiff, whether HPA employs an e-portal on its website is immaterial because there is no evidence that HPA used its website to purposefully target Louisiana vendors or subcontractors. This does not present a case where HPA "engage[d] in repeated online contacts with forum residents over the internet".[50] Moreover, for the specific jurisdiction analysis, there is no evidence that HPA used its website to target PASI. In other words, the mere existence of an e-portal on HPA's website is not evidence that PASI's contract action arose from HPA's forum related contacts.

Finally, PASI seeks to demonstrate HPA contacts with Louisiana through the internet activity of its parent holding company EMCOR. EMCOR's websites are insufficient to establish minimum contacts by HPA with Louisiana. Anything related to EMCOR, including its website, is irrelevant for purposes of determining whether personal jurisdiction exists over HPA, because "so long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other."[51]

---

[50] *Revell,* 317 F.3d at 472 (5th Cir. 2002).
[51] *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983), See also, *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, 856 (5th Cir. 2000).

33794

## III. CONCLUSION

For the reasons set forth, this Court lacks personal jurisdiction over HPA. HPA's *Motion to Dismiss*[52] for lack of personal jurisdiction is GRANTED. The remaining Motions[53] are hereby dismissed as moot.

Signed in Baton Rouge, Louisiana on August 11, 2016.

*[signature]*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[52] Rec. Doc. 33.
[53] Rec. Docs. 52 and 60.

33794